Pat **ENDSLEY**, Plaintiff,

v.

Al **NAES**, Richard Hurley, Ron Lister, Saline County, and the Saline County Sheriff's Department, Defendants.

No. 83–4112.

United States District Court, D. Kansas.

June 22, 1987.

Steven M. Dickson, McCullough, Wareheim & LaBunker, Topeka, Kan., Pantaleon Florez, Jr., Topeka, Kan., for plaintiff.

Benfer & Farrell, George F. Farrell, Jr., Topeka, Kan., for Richard Hurley & Saline County Sheriff's Dept. and Al Naes.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an employment discrimination action brought by the plaintiff pursuant to 42 U.S.C. §§ 1983 and 2000e et seq. (Title VII). Plaintiff is also asserting claims directly under the United States Constitution and the Kansas Act Against Discrimination, K.S.A. 44–1001 et seq. The named defendants are Saline County; Saline County Sheriff's Department; Al Naes, sheriff of Saline County; Richard Hurley, a captain in the Saline County Sheriff's Department; and Ron Lister, undersheriff of Saline County. Plaintiff, a white female, contends that she was discriminated against by the defendants because of her sex in the terms and conditions of her employment as a volunteer reserve deputy and as a road patrol deputy. She further contends that the defendants discriminated against her because of her sex when they constructively discharged her from her position as a road patrol deputy on October 1, 1981. Plaintiff also contends that her First Amendment right to association was violated by the defendants. This matter is presently before the court upon defendants' motion for summary judgment. Having carefully reviewed the materials filed by the parties, the court is now prepared to rule.

In considering a motion for summary judgment, the court must examine the evidence in the light most favorable to the opposing party. Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir.1984), cert. denied, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). As to materiality, the Supreme Court has stated that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., supra 106 S.Ct. at 2510. The substantive area of law involved is relevant in determining which facts are material. Id. The mere existence of a scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. Id. There is no express or implied requirement that the moving party support its motion with materials negating the nonmoving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The facts pertinent to the arguments raised by the defendants are uncontroverted. The court shall provide a broad overview of these facts and then specifically address others as we consider the arguments made by the parties.

Plaintiff is a white female. In April, 1980, plaintiff began working for the Saline County Sheriff's Department (Department) as a reserve deputy. As a reserve deputy, plaintiff had no specific duties and was not paid a salary. She was expected to ride on patrol with a road patrol deputy from the Sheriff's Department at least sixteen hours each month and was expected to complete reserve training school, which consisted of approximately 200 hours of training. The only equipment furnished to reserve deputies by the Department is a manual setting forth the procedures of the Department. No uniforms or guns were issued to any reserve deputies. Occasionally, if the Sheriff's Department had spare uniforms not in use which happened to fit a reserve deputy, the reserve deputy would be allowed to use the uniform. Reserve deputies were not entitled to use firearms until the deputy

had completed the reserve training program. The Department did on occasion allow reserves who had been certified by the Department or other law enforcement agencies to use firearms to carry a gun prior to completing the reserve training program. Most of these individuals had previously been a regularly commissioned law enforcement officer in another Kansas law enforcement agency.

Plaintiff was hired by the Saline County Sheriff's Department as a road patrol deputy on July 6, 1981. Plaintiff was hired on a probationary basis. Following plaintiff's hiring, rumors began to circulate among the law enforcement agencies working with the Department that plaintiff and another female road patrol deputy, Deb Redmond, were homosexuals. On August 11, 1981, there was a disturbance at Ms. Redmond's house when Ms. Redmond's husband accused the plaintiff of being his wife's homosexual lover, and a fight broke out. This disturbance necessitated a call to the Department. Five officers became involved in the incident, four at the scene and the dispatcher, who was monitoring the situation. After this incident, the rumors about the homosexual affair between the plaintiff and Ms. Redmond intensified and grew in frequency. Members of the community and the Department were aware of the rumors. On October 1, 1981, Undersheriff Lister informed the plaintiff that she was not to ride with Ms. Redmond anymore without permission. Prior to that time, plaintiff would frequently ride with Ms. Redmond while Ms. Redmond was on duty and the plaintiff was off duty. The events which occurred after plaintiff was told not to ride with Ms. Redmond any longer are in dispute. The defendants have evidence which indicates that plaintiff voluntarily resigned in a fit of anger after being told that she could no longer ride with Ms. Redmond. Plaintiff has testified that later in the day on October 1, 1981 she was called back to Undersheriff Lister's office and told that she had no choice but to offer her resignation. In evaluating the instant motion, the court shall accept as true the plaintiff's version of what occurred on October 1, 1981.

The defendants contend they are entitled to summary judgment on all of plaintiff's claims. Before we address these matters, we shall address several preliminary matters. First, defendants contend that they are entitled to summary judgment on plaintiff's claim against them brought directly under the United States Constitution. We agree. This court has consistently held that *Bivens*-type actions are not available against state officials because of the availability of a remedy under 42 U.S.C. § 1983. *Lee v. Wyandotte County,* 586 F.Supp. 236, 238 (D.Kan.1984); *Howard v. Topeka–Shawnee County Metropolitan Planning Commission,* 578 F.Supp. 534, 537 (D.Kan.1983). Second, defendant Saline County contends that it is entitled to summary judgment on plaintiff's claim against it for punitive damages. Plaintiff, aware of *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), concedes the correctness of the defendant's argument. Finally, defendant Saline County Sheriff's Department asserts that it should be dismissed from this action because it lacks the capacity to be sued under Kansas law. Again, plaintiff concedes the defendant's argument and admits that the Sheriff's Department should be dismissed as a defendant to the lawsuit.

The court shall now consider plaintiff's claims in this case. The court shall first begin with plaintiff's claims of sex discrimination. Plaintiff has alleged three acts of sex discrimination. First, plaintiff claims she was discriminated against in certain terms and conditions of her employment when she was a reserve deputy. Specifically, she asserts that she was treated differently than male reserve officers because she was not allowed to wear a uniform or carry a gun. Second, plaintiff alleges that she was discriminated against in the terms and conditions of her employment as a road patrol deputy because she was not sent to the Law Enforcement Academy during her three month period of employment with the Department. Finally, plaintiff contends she was discriminated against when she was constructively discharged from her po-

sition as a road patrol deputy with the Sheriff's Department.

The defendants have raised several arguments concerning each of the sex discrimination claims made by the plaintiff. Each of the arguments advanced by the defendants is persuasive. Nevertheless, we shall proceed directly to the defendants' contentions that summary judgment is appropriate on each of these claims because plaintiff has failed to present sufficient evidence from which a factfinder could rationally infer that the plaintiff was the victim of sex discrimination.

In employment discrimination actions brought under Title VII and § 1983, the court generally applies the legal principles enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). First, the plaintiff is required to establish a prima facie case of discrimination by a preponderance of the evidence. *Texas Dept. of Community Affairs v. Burdine, supra*, 450 U.S. at 253, 101 S.Ct. at 1093. The proof necessary to make such a showing will vary from case to case. *McDonnell Douglas Corp. v. Green, supra*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. Generally, the plaintiff must produce sufficient evidence of actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on illegal discriminatory criterion. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Once a prima facie case of discrimination has been established, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the actions taken. If the employer is able to do so, then the burden shifts to the plaintiff to prove by a preponderance of the evidence that the legitimate justification offered by the employer is merely a pretext for discrimination. *Texas Dept. of Community Affairs v. Burdine, supra*, 450 U.S. at 256, 101 S.Ct. at 1095. The three-tiered approach of *McDonnell Douglas* should not, however, be rigidly

applied. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983); *Alires v. Amoco Production Co.*, 774 F.2d 409, 412 (10th Cir.1985). Rather, the purpose of the allocations of burdens in these types of cases is to "sharpen the inquiry into the elusive factual question of intentional discrimination." *Texas Dept. of Community Affairs v. Burdine, supra*, 450 U.S. at 255, 101 S.Ct. at 1094.

█ Plaintiff has asserted that she was discriminated against because of her sex when she was not allowed to carry a gun until after she completed the reserve training program. The defendants have presented evidence which shows that all reserve officers, both male and female, were not allowed to carry firearms until they completed the reserve training program. Plaintiff responded that she knew of a male reserve officer who was allowed to carry a gun prior to completing the training program. The Department has admitted that a limited exception to the aforementioned policy did exist. This exception allowed reserve officers who had previously been certified to use firearms to carry guns. These reserves had either been previously commissioned in law enforcement or had been certified by the Department. The defendants have shown that the male reserve who was allowed to carry a gun prior to completing the reserve training program had previously been certified to use firearms three times by the Department. He had worked as a reserve officer for over a year prior to the time plaintiff began her service as a reserve officer. These uncontroverted facts fail to reveal the presence of any sex discrimination. The plaintiff has presented a prima facie case, and the defendants responded with a legitimate, non-discriminatory reason for their actions. Plaintiff has failed to demonstrate that the legitimate, non-discriminatory reason offered by the defendants is a pretext for discrimination. Accordingly, the defendants are entitled to summary judgment on this claim.

■ Plaintiff has also alleged that she was discriminated against because of her sex when she was not provided with a uniform as were some male reserves. The uncontroverted evidence demonstrates that it was the policy of the Department not to furnish uniforms to any reserves. However, the Department did provide leftover uniforms to reserve deputies if the uniforms fit. Plaintiff has admitted that she did not fit into any of the leftover uniforms but that some of her male counterparts did. This evidence clearly demonstrates that no sex discrimination was present concerning the issuance of uniforms. Thus, we find that the defendants are entitled to summary judgment on both of plaintiff's claims of sex discrimination relating to her service as a reserve deputy.

■ Plaintiff also asserts that she was discriminated against in the terms and conditions of her employment after she became a road patrol deputy with the Department in July, 1981. She contends that the defendants discriminated against her because of her sex in not sending her to the Law Enforcement Agency during her three month period of employment with the Department. The uncontroverted evidence before the court shows that road patrol deputies were not sent to the Academy until after the completion of their probationary periods. The reason for this requirement was to avoid the expense of sending individuals to the Academy who failed to complete the probationary period. The record here does contain a factual dispute as to whether plaintiff had a three or six month probationary period. However, this dispute is not material to a resolution of this issue. Whether the probation period was three months or six months makes no difference here since plaintiff was still clearly within her probationary period at her termination. Thus, plaintiff was not eligible to attend the Academy under Department practice. Plaintiff presented no evidence which suggests that the reason offered by the defendants was a pretext for sex discrimination. Plaintiff was unable to demonstrate disparate treatment concerning this claim. Accordingly, defend-

ants are entitled to summary judgment on this claim.

■ The court shall next turn to plaintiff's claim that she was constructively discharged by the defendants because of her sex. As stated previously, for the purposes of this motion, we shall accept the plaintiff's version of the facts. Plaintiff has presented facts demonstrating a prima facie case. However, the defendants have responded with a legitimate, non-discriminatory reason for requesting that plaintiff resign from her position as a road deputy. The defendants have presented evidence that plaintiff was discharged or asked to resign in order to quell rumors in the community that plaintiff was engaged in a homosexual relationship with another female road patrol deputy. At this point, it is incumbent upon the plaintiff to demonstrate that issues of material fact exist as to whether the reason given by the defendants was a pretext for discrimination. In order to show pretext on this claim, plaintiff must show that similarly situated male road deputies were treated differently. Plaintiff has admitted that she has no such evidence. Plaintiff could also show disparate treatment of other females in the Department or other evidence of discrimination against her during her employment. *See Mohammed v. Callaway*, 698 F.2d 395, 399 (10th Cir.1983). Plaintiff has produced no other evidence. The evidence before the court shows no disparate treatment of females in the Department. Further, plaintiff has been unable to provide any evidence that she had been previously discriminated against by the defendants because of her sex. Under these circumstances, we are forced to conclude that the defendants are entitled to summary judgment on this claim.

In sum, we find that the defendants are entitled to summary judgment on all of plaintiff's claims of sex discrimination. Plaintiff has presented insufficient evidence of discriminatory intent by the defendants and, thus, summary judgment is appropriate. *See Clark v. Atchison, Topeka & Santa Fe Railway Co.*, 731 F.2d 698 (10th Cir.1984). Summary judgment must be entered when there is no genuine issue

of material fact that the legitimate, non-discriminatory reason offered by the defendant is a pretext. *Carey v. United States Postal Service*, 812 F.2d 621 (10th Cir. 1987).

Finally, we shall consider plaintiff's § 1983 right to association claim. The exact nature of this claim is somewhat vague. From the analysis contained in plaintiff's response to the defendants' motion for summary judgment, we must conclude that she is contending her associational rights were violated because she was discharged for riding with another female road patrol deputy in the Department.

 The rights to freedom of speech, assembly and petition are expressly protected by the First Amendment, and there is no doubt that some rights of association are encompassed by these explicit guarantees. *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Healy v. James*, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972). However, this right of association is not open-ended; it does not exist in a vacuum and is circumscribed by the specific right involved and the circumstances surrounding the exercise of the right. When the state acts as an employer, it may not without substantial justification, condition employment on the relinquishment of constitutional rights. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). A balancing process must be applied. The court must balance the interests of the employee with the interests of the state, as the employer, in promoting the efficiency of the public services it performs through its employees. *Connick v. Myers*, 461 U.S. 138, 140, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

The law is well-settled that the state has a significant interest in regulating the conduct of police officers. *Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976); *Gasparinetti v. Kerr*, 568 F.2d 311 (3d Cir.1977), *cert. denied*, 436 U.S. 903, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978). Courts have repeatedly recognized the significant state interest in deterring the conduct of police officers which brings a police department in disrepute. *Baron v. Meloni*, 556 F.Supp. 796 (W.D.N.Y.1983), *aff'd without pub. opinion*, 779 F.2d 36 (2d Cir.1985),

*cert. denied*, 474 U.S. 1058, 106 S.Ct. 798, 88 L.Ed.2d 775 (1986); *Naragon v. Wharton*, 572 F.Supp. 1117 (M.D.La.1983), *aff'd*, 737 F.2d 1403 (5th Cir.1984); *Childers v. Dallas Police Dept.*, 513 F.Supp. 134 (N.D. Tex.1981); *Wilson v. Swing*, 463 F.Supp. 555 (M.D.N.C.1978).

 The facts, even when viewed in the light most favorable to the plaintiff, do not suggest that plaintiff was discharged for riding with another female road patrol deputy. The facts, viewed in the light most favorable to the plaintiff, show that plaintiff was discharged because of the rumors that existed concerning her relationship with the other female road deputy. The court is convinced that any associational right that plaintiff might have is outweighed by the significant interests of the Department under the circumstances of this case. *See, e.g., Rich v. Secretary of the Army*, 735 F.2d 1220, 1229 (10th Cir. 1984). The defendants acted to protect the public image of the Department and to maintain close working relationships internally and externally with the community. These are legitimate concerns and they provide sufficient justification for the action taken against the plaintiff. The defendants did not unconstitutionally infringe plaintiff's First Amendment right to association when they discharged plaintiff. Accordingly, the defendants are entitled to summary judgment on this claim also.

Since the court has granted summary judgment against the plaintiff on all of her federal claims, the court shall dismiss the remaining pendent state claim. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Jones v. Intermountain Power Project*, 794 F.2d 546, 549 (10th Cir.1986).

IT IS THEREFORE ORDERED that defendants' motion for summary judgment be hereby granted. Judgment shall be entered for all defendants and against the plaintiff.

IT IS SO ORDERED.